1  Sabita J. Soneji, California Bar No. 224262
2  *ssoneji@tzlegal.com*
   **TYCKO & ZAVAREEI LLP**
3  1970 Broadway
    Suite 1070
4  Oakland, CA 94612
   Telephone: (510) 254-6808
5
6  [Additional Counsel Listed on Signature Page]

7  *Attorneys for Plaintiffs and the Proposed Classe*

8              **UNITED STATES DISTRICT COURT**
9              **CENTRAL DISTRICT OF CALIFORNIA**

10  VALERIE LOZOYA, JOLINDA          Case No. 8:25-cv-00202
    MURPHY, LAUREN NEVE, AND
11  MOLLY O'HARA, *on behalf of themselves*   **CLASS ACTION COMPLAINT**
    *and all others who are similarly situated*,
12                                    **DEMAND FOR JURY TRIAL**
13            Plaintiffs,
14
    v.
15
16  TICKETMASTER LLC, and LIVE
    NATION ENTERTAINMENT, INC.,
17
18            Defendants.
19
20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT

1    Plaintiffs Eric Anderson, Tiffany Moore, and Dekima Thomas bring this Class

2  Action Complaint, both individually and on behalf of all others similarly situated,

3  against Defendants Live Nation Entertainment, Inc., and Ticketmaster LLC

4  (collectively, "Ticketmaster"). Plaintiffs' allegations are based on personal knowledge

5  and belief and the investigation of counsel.

6                            **INTRODUCTION**

7    1.    Data companies are acutely aware of the critical importance of

8  cybersecurity in an increasingly interconnected world. With the exponential growth of

9  cloud storage, companies are entrusted with sensitive information, ranging from

10  personal details to financial records.

11    2.    Defendants Ticketmaster, LLC and Live Nation Entertainment, Inc.

12  (together "Defendants") did not keep the personal information they collected from

13  class members secure.

14    3.    Defendants have long understood the importance of robust cybersecurity

15  to protect consumer data. Information security policies and practices are imperative to

16  ensuring that sensitive information is not exposed to unauthorized third parties. These

17  exposures, commonly referred to as "data breaches," can cause significant harm to

18  individuals—exposing them to fraud and attempted fraud, identity theft, reputational

19  harm, and the continuing risk of harm that results from criminals having their sensitive

20  information.

21    4.    A single data breach can result in catastrophic consequences for

22  individuals.  As a result, and based upon legal and industry-standard requirements,

23  companies prioritize robust cybersecurity measures.

24    5.    In this case, however, none of the Defendants implemented three of the

25  most basic and industry-standard cybersecurity policies to protect Personal

26  Information, including most prominently, multifactor authentication (MFA).[1] The

27  _____

28  [1] "Personal Information," as used herein, refers to that information which was exposed

1    foreseeable result: a data breach.

2        6.    Defendants use a cloud storage company called Snowflake to keep the

3    Personal Information they collected secure.  But that information was not secure.  The

4    cybercriminal known as UNC5537 used compromised login credentials for Defendants,

5    plugged them in to Defendants' Snowflake accounts, and successfully exfiltrated

6    Personal Information relating to hundreds of millions of consumers.

7        7.    UNC5537's success was made possible by basic data security failings on

8    the part of Defendants. These companies collectively flouted relevant governmental

9    guidance, regulations, statutes, and industry standards.

10        8.    The Data Breach's foreseeable consequences are neither imaginary nor

11   hypothetical: shortly after the Data Breach, sensitive information previously stored with

12   Snowflake began appearing for sale on the Dark Web.[2] The harm resulting from

13   allowing this information to be exposed cannot be undone.

14        9.    Plaintiffs and Class Members[3] now face the real and actual harm that the

15   Data Breach has caused them and will continue to cause them.  Not only have

16   cybercriminals obtained valuable and sensitive Personal Information about them, but

17   that information has been obtained by other criminals, and offered for resale to still

18   more criminals.  As a result, Plaintiffs and Class Members have already experienced

19   fraud or potential fraud, an invasion of their privacy, time and expenses spent mitigating

20   the imminent and substantial risk of data misuse, and are at significant risk of identity

21

22   to cybercriminals through the Data Breach. While the information exposed varies from
     each Defendant, each protected that information behind credentials (i.e., a username
23   and password), intending that it not be exposed to unauthorized third parties.  As
     alleged herein, inadequate, negligent, and reckless cybersecurity practices resulted in that
24   information being exposed.

25   [2] Snowflake Breach Threat Actor Offers Data of Cloud Company's Customers,
     SOCRadar, https://socradar.io/overview-of-the-snowflake-breach/ (last accessed Jan.
26   13, 2024).

27   [3] "Class Members" refers to those individuals who were impacted by the Data Breach,
     as alleged herein. Specific class definitions for each Defendant are provided in the
28   relevant sections.

CLASS ACTION COMPLAINT

1  theft, reputational harm, and other injuries.

2      10.    Defendants bears responsibility for their role in the Data Breach.  Despite

3  their experience and sophistication, Defendants were negligent (at best) and reckless (at

4  worst) for failing to implement basic and routinely required cybersecurity practices to

5  protect Plaintiffs' and Class Members' Personal Information.

6                                    **PARTIES**

7  **I.    Defendants**

8      11.    **Live Nation Entertainment, Inc.** is an entertainment company

9  incorporated under Delaware law, with its principal place of business located at 9348

10 Civic Center Drive, Beverly Hills, California.[4]

11     12.    **Ticketmaster, LLC** is a ticket distribution company for entertainment

12 events, and is a wholly owned subsidiary of Live Nation.[5] Ticketmaster is a Virginia

13 limited liability company, with its principal place of business located at 9348 Civic

14 Center Drive, Beverly Hills, California.[6]

15 **II.    Plaintiffs**

16     13.    **Plaintiff Valerie Lozoya** is a citizen of California residing in Hawthorne.

17 Plaintiff Lozoya received a data breach notice letter, via U.S. mail, directly from

18 Ticketmaster, dated July 17, 2024. Plaintiff Lozoya is a current customer of

19 Ticketmaster and has regularly purchased tickets. In doing so, she provided

20 Ticketmaster with at least her name, address, email, phone number, and payment card

21 information.

22     14.    As a result of the Data Breach, Plaintiff Lozoya has suffered injury and

23

24 [4] Live Nation Entertainment, Inc., Annual Report (Form 10-K) (Feb. 22, 2024)
   ("LiveNation                    2024                    10-K"),
25 https://www.sec.gov/Archives/edgar/data/1335258/000133525824000017/lyv-
   20231231.htm.
26 [5] LiveNation 2024 10-K at 54.
27 [6] Ticketmaster, LLC, *Statement of Information*, Cal. Sec'y of State (Sept. 25, 2024),
   https://bizfileonline.sos.ca.gov/api/report/GetImageByNum/253133124121113249
28 074045085047228112143236158047.

1   damages, including but not limited to, the unauthorized use of her stolen Personal
2   Information; the substantial risk of identity theft and reasonable mitigation efforts spent
3   to protect against such risks, including time and expenses spent obtaining credit
4   monitoring services and reviewing financial accounts for fraudulent activity; loss of
5   property and value of that property with respect to the inability to control use of her
6   Personal Information; invasion of her privacy; and emotional distress and anxiety
7   resulting from the theft of her Personal Information and responding to identity theft.

8       15.    **Plaintiff Jolinda Murphy** is a citizen of Montana residing in Missoula.
9   Plaintiff Murphy received a data breach notice letter, via U.S. mail, directly from
10  Ticketmaster, dated July 17, 2024. Plaintiff Murphy is a customer of Ticketmaster, but
11  she cannot recall the last time she purchased tickets. She does recall that, when she did
12  purchase tickets, she provided Ticketmaster with at least her name, address, email,
13  phone number, and payment card information.

14      16.    As a result of the Data Breach, Plaintiff Murphy has suffered injury and
15  damages, including but not limited to, the substantial risk of identity theft and
16  reasonable mitigation efforts spent to protect against such risks, including time and
17  expenses spent obtaining credit monitoring services and reviewing financial accounts
18  for fraudulent activity; loss of property and value of that property with respect to the
19  inability to control use of her Personal Information; invasion of her privacy; and
20  emotional distress and anxiety resulting from the theft of her Personal Information.

21      17.    **Plaintiff Lauren Neve** is a citizen of California residing in San Juan
22  Capistrano. Plaintiff Neve is a former customer of Ticketmaster, where she last
23  purchased a ticket in 2022 and in doing so, provided Ticketmaster with at least her
24  name, address, email, and payment card information.

25      18.    As a result of the Data Breach, Plaintiff Neve has suffered injury and
26  damages, including but not limited to, the unauthorized use of her stolen Personal
27  Information; the substantial risk of identity theft and reasonable mitigation efforts spent
28  to protect against such risks, including time and expenses spent obtaining credit

CLASS ACTION COMPLAINT

1      monitoring services and reviewing financial accounts for fraudulent activity; loss of

2      property and value of that property with respect to the inability to control use of her

3      Personal Information; invasion of her privacy; and emotional distress and anxiety

4      resulting from the theft of her Personal Information and responding to identity theft.

5             19.     **Plaintiff Molly O'Hara** is a citizen of Massachusetts residing in Revere.

6      Plaintiff O'Hara received a data breach notice letter, via U.S. mail, directly from

7      Ticketmaster, dated July 9, 2024. Plaintiff O'Hara is a current customer of Ticketmaster

8      who has regularly purchased tickets. In doing so, she provided Ticketmaster with at

9      least her name, address, email, phone number, and payment card information.

10            20.     As a result of the Data Breach, Plaintiff O'Hara has suffered injury and

11     damages, including but not limited to, the unauthorized use of her stolen Personal

12     Information; the substantial risk of identity theft and reasonable mitigation efforts spent

13     to protect against such risks, including time and expenses spent obtaining credit

14     monitoring services and reviewing financial accounts for fraudulent activity; loss of

15     property and value of that property with respect to the inability to control use of her

16     Personal Information; invasion of her privacy; and emotional distress and anxiety

17     resulting from the theft of her Personal Information and responding to identity theft.

18                         **JURISDICTION AND VENUE**

19            21.     This Court has subject-matter jurisdiction pursuant to the Class Action

20     Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action in which the

21     matter in controversy exceeds the sum of $5,000,000, and Defendants are citizens of

22     States different from that of at least one Class member. This Court also has

23     supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged

24     herein form part of the same case or controversy.

25            22.     Venue is proper in this Court because Defendants are domiciled in this

26     State, and have conducted business in this State. The Court has personal jurisdiction

27     over the Defendants because they are all headquartered in this State.

28

CLASS ACTION COMPLAINT

1

**FACTUAL ALLEGATIONS**

2      23.   Consumers are largely unable to purchase concert tickets or enjoy concerts

3  without working through Live Nation, and its wholly owned subsidiary, Ticketmaster.

4      24.   Live Nation and Ticketmaster control approximately 70% of the

5  American market for live event ticketing, selling hundreds of millions of tickets per

6  year.[7] Live Nation reported a quarterly revenue of $7.7 billion in November 2024.[8]

7      25.   Ticketmaster requires consumers who purchase tickets on their platform

8  to provide their Personal Information to Ticketmaster, both to facilitate the ticket sales

9  and for Ticketmaster's own business purposes. Ticketmaster promises to keep

10  consumers' Personal Information secure and does not allow consumers to opt out of

11  sharing their Personal Information.

12      26.   Ticketmaster made express commitments to protect consumer Personal

13  Information in its Privacy Policy, assuring consumers in a caption titled, Looking After

14  Your Information, "We have security measures in place to protect your information."[9]

15      27.   Ticketmaster publicly represented that data security forms a crucial aspect

16  of its business model. For instance, on a segment of Ticketmaster LLC's website, the

17  company stated:

18      "Our goal is to maintain your trust and confidence by handling your personal

19  information with respect and putting you in control."[10]

20

21  [7] Daniel Allen, *Does Live Nation Own Ticketmaster? The Complete Story Behind Entertainment's Biggest Merger, The Ticket Lover* (Oct. 28, 2024), https://theticketlover.com/does-live-nation-own-ticketmaster/).

22

23  [8] Live Nation, *LIVE NATION ENTERTAINMENT REPORTS THIRD QUARTER 2024 RESULTS* (Nov. 11, 2024), https://www.livenationentertainment.com/2024/11/live-nation-entertainment-reports-third-quarter-2024-results/.

24

25  [9]   Ticketmaster, *PRIVACY POLICY: Looking After Your Information*, https://web.archive.org/web/20240226040956/https://privacy.ticketmaster.com/privacy-policy#looking-after-your-information (archived Feb. 26, 2024).

26

27  [10]   Ticketmaster, *PRIVACY POLICY: Our Commitment To You*, https://web.archive.org/web/20240226040956/https://privacy.ticketmaster.com/pri

28

CLASS ACTION COMPLAINT

1    "As a global company, our fans are located all over the world, depending on your
2    market there are specific laws and regulations around privacy rights such as the GDPR
3    in Europe, LGPD in Brazil and CCPA in United States."[11]

4    "We have security measures in place to protect your information."[12]

5    28.    Live Nation also maintained a privacy policy section, affirming its
6    adherence to various state and federal laws.[13]

7    29.    Defendants are Snowflake customers. Ticketmaster stores the Personal
8    Information of its consumers on Snowflake's Data Cloud services, which include
9    customers' names, addresses, contact information (email and phone numbers), and
10    payment card information.

11    30.    In 2024, Defendants had a data breach involving personal information
12    stored in Snowflake's cloud (the "Data Breach").

13    31.    The events leading up to the Data Breach and its fallout are summarized
14    in a June 10, 2024 report published by Mandiant (the "Mandiant Report"), a
15    cybersecurity firm that assisted Snowflake in its investigation of the Data Breach.[14]

16    32.    The Data Breach occurred because Defendants did not follow basic,
17    routinely-adopted, best-practice, necessary, and standard cybersecurity guidelines.

18

19    vacy-policy#our-commitment-to-you (archived Feb. 26, 2024).
20    [11]    Ticketmaster, *PRIVACY POLICY: Your Choices & Rights*,
      https://web.archive.org/web/20240226040956/https://privacy.ticketmaster.com/pri
21    vacy-policy#your-choices-&-rights (archived Feb. 26, 2024).
22    [12] *Id.*
23    [13]    Live Nation, *PRIVACY POLICY: Looking After Your Information*,
      https://web.archive.org/web/20240226040956/https://privacy.ticketmaster.com/pri
      vacy-policy#looking-after-your-information (archived Feb. 26, 2024).
24    [14] Mandiant, *UNC5537 Targets Snowflake Customer Instances for Data Theft and Extortion*,
25    Google Cloud (June 10, 2024), https://cloud.google.com/blog/topics/threat-
      intelligence/unc5537-snowflake-data-theft-extortion    ("*Mandiant Report*").    Since
26    Snowflake had a hand in the Mandiant Report, the events are likely worse than
27    presented, and will be clarified in discovery. *See also Snowflake Breach: Hacker Confirms
      Access Through Infostealer Infection*, Hudson Rock, https://archive.is/tljkW (archived
28    website).

8
CLASS ACTION COMPLAINT

33.    According to the Mandiant Report, the success of UNC5537's straightforward cyberattack was made possible by "three primary factors" on the part of Defendants.

34.    **First**, Defendants did not have MFA enabled. MFA is a basic and industry-standard cybersecurity measure, available for nearly three decades,[15] that requires a user to, in addition to providing their username and password, further authenticate their identity through another source, such as through a passcode sent by text message or email.[16] Without MFA, a valid username and password was all UNC5537 needed to access a Snowflake customer's data—similar to a key placed under a doormat.

35.    **Second**, Defendants did not have policies and procedures in place to rotate or disable stale credentials.

36.    **Third**, Defendants did not restrict access to Snowflake cloud-based storage based upon certain trusted locations.  Conditional Access Policies allow companies to fine-tune access to control from which devices and locations users can access resources. Again, without such protection, a valid username and password entered was all UNC5537 needed to access Defendants' data from anywhere at any time.

37.    As set out in more detail herein, Plaintiffs' and Class Members' Personal Information have already been sold and exchanged on the dark web between UNC5537 and various other cybercriminal threat actors.

---

[15] Bojan Šimić, *Identity in the Digital Age and the Rise of Multi-Factor Verification*, Forbes (Oct. 10, 2024), https://www.forbes.com/councils/forbestechcouncil/2024/10/10/identity-in-the-digital-age-and-the-rise-of-multi-factor-verification/ (MFA was developed by AT&T as a system to exchange codes on two-way pagers).

[16] Rose de Fremery, *Tracing the Evolution of Multi-Factor Authentication*, LastPass (Oct. 16, 2023), https://blog.lastpass.com/posts/tracing-the-evolution-of-multi-factor-authentication.

CLASS ACTION COMPLAINT

1    **I.    The Data Breach harmed Plaintiffs and Class Members.**

2        38.    The effects of the Data Breach were felt immediately—not only by

3  Defendants—but by individual consumers. Personal Information is valuable property.

4  Its value is axiomatic, considering the market value and profitability of "Big Data" to

5  corporations in America.

6        39.    Information protected by credentials—usernames and passwords—is

7  intended to stay private, and not disclosed to third parties (otherwise, why password-

8  protect the information, at all?).  But because of Defendants' failure to follow basic

9  cybersecurity guidelines, the information stored on Snowflake's cloud-based servers

10  was accessible to cybercriminals, who exfiltrated the data for nefarious purposes.

11        40.    Ticketmaster's failings were particularly egregious given the enormous

12  amount of Personal Information it stored on Snowflake's servers. Tasked with handling

13  the data of over 560 million consumers, Ticketmaster's failure to implement basic data

14  security measures is all the more inexplicable and reckless.

15        41.    Defendants have disclosed that certain types of Personal Information

16  were exposed in the Data Breach. To date, Defendants have confirmed at least the

17  following consumer data was exposed: consumer name, contact information, last four

18  digits of credit card numbers and expiration dates, ticket order details.[17]

19        42.    The Personal Information exposed is extremely valuable and can be used

20  for a number of nefarious purposes.

21        43.    Information from this Data Breach has already been found in several

22  places on the dark web—even reappearing after law enforcement agencies shut down

23  certain websites offering information for sale.[18]

24

25  [17] Ticketmaster, Notice of Data Breach (July 8, 2024) ("Ticketmaster Notice"),
26  https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-
    a1252b4f8318/0d26b6dd-b466-4f2a-bec0-ec2ad0738583.html.

27  [18] *See, e.g.,* Ionut Arghire, *Hackers Boast Ticketmaster Breach on Relaunched BreachForums,*
28  SecurityWeek (May 31, 2024),   https://www.securityweek.com/hackers-boast-

44.    Identity thieves use Personal Information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[19] According to Experian, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to, among other things: open a new credit card or loan; change a billing address so the victim no longer receives bills; open new utilities; obtain a mobile phone; open a bank account and write bad checks; use a debit card number to withdraw funds; obtain a new driver's license or ID; or use the victim's information in the event of arrest or court action.[20]

45.    Exposed driver's license numbers are sold on the dark web for as much as $20 a piece because they can be used to create counterfeit licenses, open financial accounts, cash counterfeit checks, and even obtain medical care using someone's

---

ticketmaster-breach-on-relaunched-breachforums/; Sergiu Gatlan, *Advance Auto Parts stolen data for sale after Snowflake attack*, Bleeping Computer (June 5, 2024), https://www.bleepingcomputer.com/news/security/advance-auto-parts-stolen-data-for-sale-after-snowflake-attack/; Jessica Lyons, *Fiend touts stolen Neiman Marcus customer infor for $150k*, The Register (June 25, 2024), https://www.theregister.com/2024/06/25/neiman_marcus_snowflake_victim/.

[19] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 C.F.R. § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things: "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number. *Id.*
[20] See Louis DeNicola, *What Can Identity Thieves Do with Your Private Information and How Can You Protect Yourself*, Experian (May 21, 2023), https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/.

CLASS ACTION COMPLAINT

1   identity.[21] Exposed gift cards can result in their balances being reduced to nothing.[22]

2   Individuals may also experience theft of their event tickets.[23]

3        46.    Each additional piece of Personal Information exposed in a data breach

4   increases an individual's risk of identity fraud and exposure to scams.  Information from

5   one breach may be combined with information from other breaches to create "fullz"—

6   or complete information about an individual sufficient to facilitate identity theft, allow

7   for the purchase of goods and services on the internet, and enable criminals to open

8   new accounts in a victim's name.[24]

9        47.    The exposure of Personal Information in the Data Breach has subjected

10  the Plaintiffs to actual and imminent harm that is concrete and particularized.

11       48.    Defendants did not take sufficient steps to protect their customers, and

12  have not done nearly enough to compensate the victims of the Data Breach, who will

---

[21] *How driver's licenses exposed in data breaches increase your risk of identity fraud*, IDX (May 6, 2021), https://www.idx.us/knowledge-center/how-drivers-licenses-exposed-in-data-breaches-increase-your-risk-of-identity-fraud; John Egan, *What Should I Do if My Driver's License Number Is Stolen*, Experian (June 13, 2024), https://www.experian.com/blogs/ask-experian/what-should-i-do-if-my-drivers-license-number-is-stolen/.

[22] Jackie Callaway, *Beware: Hackers can steal money off gift cards before you have a chance to use them*, ABC News Tampa Bay (Dec. 29, 2020), https://www.abcactionnews.com/money/consumer/taking-action-for-you/beware-hackers-can-steal-money-off-gift-cards-before-you-have-a-chance-to-use-them.

[23] Taylor O'Bier, *Hackers allegedly leak tickets from Ticketmaster to Talyor Swift tour and more*, Scripps (Jul. 10, 2024), https://www.scrippsnews.com/science-and-tech/data-privacy-and-cybersecurity/hackers-allegedly-leak-tickets-from-ticketmaster-to-taylor-swift-tour-and-more ("Sp1d3rHunters hit back, stating in another forum post that the ticket information they allegedly stole was for physical ticket types and therefore they can't be refreshed. If this is true, Ticketmaster would have to void and reissue all the stolen tickets.").

[24] Robert Lemos, *All about your 'fullz' and how hackers turn your personal data into dollars*, PCWorld (June 2, 2016), https://www.pcworld.com/article/414992/all-about-your-fullz-and-how-hackers-turn-your-personal-data-into-dollars.html; Paige Tester, *What are Fullz? How Hackers & Fraudsters Obtain & Use Fullz*, DataDome (Mar. 3, 2023), https://datadome.co/guides/account-takeover/what-are-fullz-how-do-fullz-work/.

---

CLASS ACTION COMPLAINT

1 suffer real harm for years to come.

2                    **CLASS ACTION ALLEGATIONS**

3    49.    Plaintiffs bring this action on their own behalf, and on behalf of the

4 following Class:

5         All individuals residing in the United States whose Personal Information was

6         compromised in the Data Breach.

7    50.    Excluded from the Class are Defendants' officers and directors, any entity

8 in which a Defendant has a controlling interest; and the affiliates, legal representatives,

9 attorneys, successors, heirs, and assigns of Defendants. Excluded also from the Class are

10 members of the judiciary to whom this case is assigned, their families and members of

11 their staff.

12    51.    Plaintiffs reserve the right to amend or modify the definition of the Class

13 or create additional subclasses as this case progresses.

14    52.    **Numerosity.** The members of the Ticketmaster Classes are so numerous

15 that joinder of all of them is impracticable.

16    53.    **Commonality.** There are questions of fact and law common to the

17 Ticketmaster Classes, which predominate over individualized questions. These

18 common questions of law and fact include, but are not limited to:

19         a.    Whether Ticketmaster and Live Nation had a duty to protect the

20              Personal Information of Ticketmaster Plaintiffs and Class

21              Members.

22         b.    Whether Ticketmaster and Live Nation breached express or

23              implied commitments to protect the Personal Information of

24              Ticketmaster Plaintiffs and Class Members.

25         c.    Whether Ticketmaster and Live Nation knew or should have

26              known that their data security practices were deficient.

27         d.    Whether Ticketmaster and Live Nation's data security systems were

28              consistent with industry standards prior to the Data Breach.

CLASS ACTION COMPLAINT

e.    Whether Ticketmaster and Live Nation adequately disclosed details regarding the Data Breach to affected consumers.

f.    Whether Ticketmaster unlawfully utilized, retained, misplaced, or exposed Plaintiffs' and the Class Members' Personal Information.

g.    Whether Ticketmaster Plaintiffs and Class Members are entitled to actual damages, punitive damages, treble damages, statutory damages, general damages, nominal damages, and/or injunctive relief.

54.    **Typicality.** Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' Personal Information, like that of every other Class Member, was compromised in the Data Breach.

55.    **Adequacy of Representation.** Plaintiffs will fairly and adequately represent and protect the interest of the Class Members. Plaintiffs' Counsel are competent and experienced in litigating class actions.

56.    **Predominance.** Defendants have engaged in a common course of conduct toward Plaintiffs and the Class Members, in that all the data of Plaintiffs and Class Members were stored on the same Snowflake Data Cloud network and unlawfully accessed in the same manner. The common issues arising from Defendants' conduct affecting Class Members listed above predominate over any individualized issues. Adjudication of these common issues in a single action will advance judicial economy.

57.    **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of the claims of the Class. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation.

58.    **Injunctive Relief.**    Defendants have acted on grounds that apply generally to the Class as a whole such that class certification, injunctive relief, and declaratory relief are appropriate on a class wide basis.

59.    **Issue Certification.**    Likewise, particular issues are appropriate for

CLASS ACTION COMPLAINT

1 certification because such claims present common issues whose resolution would
2 advance the disposition of this matter.

3      60.    **Identification of Class Members Using Objective Criteria.** Finally, all
4 members of the proposed Ticketmaster Classes are readily identifiable using objective
5 criteria. Defendants have access to the names and contact information of Class
6 Members affected by the Data Breach.

### CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### Negligence
### *On Behalf of Plaintiffs and the Class*

10     61.    Plaintiffs repeat and re-allege the allegations above as if fully set forth
11 herein.

12     62.    Defendants owed a duty under common law to the Class Members to
13 exercise reasonable care in obtaining, retaining, securing, safeguarding, and deleting
14 their Personal Information in its possession from being compromised, stolen, or
15 misused by unauthorized persons.

16     63.    Specifically, this duty included, among other things: (a) implementing
17 industry standard data security safeguards to protect the Personal Information of
18 Plaintiffs and the Class Members such as MFA, rotating credentials, and restricting
19 access privileges; (b) maintaining, testing, and monitoring Defendants" security systems
20 to ensure that Personal Information was adequately secured and protected; (c) timely
21 acting upon warnings and alerts to respond to intrusions; and (d) adequately notifying
22 the Plaintiffs and Class Members about the types of data that were compromised in the
23 Data Breach.

24     64.    Defendants' duty to use reasonable care arose from several sources,
25 including that Defendants knew the information they were storing was private and
26 sensitive, and that failing to take adequate steps to secure and protect the data would
27 foreseeably lead to a Data Breach which could injure individual consumers.

28     65.    Defendants had a common law duty to prevent foreseeable harm to

others. This duty existed because Defendants collected and stored valuable Personal Information that is routinely targeted by cyber criminals. Plaintiffs and Class Members were the foreseeable and probably victims of any compromise to inadequate data security practices maintained by Defendants.

66.    Defendants breached their duties owed to Plaintiffs and Class Members by failing to maintain adequate data security practices that conformed with industry standards, and were therefore negligent.

67.    Defendants breached their duties owed to Plaintiffs and Class Members by failing to exercise reasonable oversight in the selection of Snowflake to store Personal Information. Such reasonable oversight would have revealed that Snowflake's cloud services lacked industry standard data security safeguards necessary to adequately protect Personal Information.

68.    But for Defendants' negligence, the Personal Information of Plaintiffs and Class Members would not have been stolen by cybercriminals in the Data Breach.

69.    As a direct and proximate result of Defendants' breach of duties, Plaintiffs and Class Members have suffered injuries as detailed herein.

70.    As a direct and proximate result of Defendants' negligence, Plaintiffs and Class Members are entitled to damages, including compensatory, general, nominal. and/or punitive damages, in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**Violation of Applicable State Consumer Protection Laws**
*On Behalf of Plaintiffs and the Class*

71.    Plaintiffs repeat and re-allege the allegations above as if fully set forth herein.

72.    Consumer protection statutes exist to ensure that consumers are protected from unfair, deceptive, and unlawful practices.

73.    Plaintiffs are "consumers" based upon appliable state consumer protection statutes, and those statutes were enacted to ensure that Defendants did not

1  engage in unfair, deceptive, and unlawful practices while engaging in trade or
2  commerce.

3       74.    Defendants' conduct offends public policy.

4       75.    As a direct and proximate result of Defendants' unfair trade practices,
5  Plaintiffs and Class Members are entitled to injunctive relief, damages, including actual
6  damages in an amount to be proven at trial or statutory damages, whichever is greater,
7  treble damages of actual damages, and reasonable attorneys' fees, as applicable under
8  various consumer protection statutes.

9       76.    This cause of action will be amended prior to trial based upon discovery
10  and choice of law.

11  **RESERVATION OF RIGHTS TO ASSERT ADDITIONAL CLAIMS FOR**
12  **RELIEF**

13       77.    Plaintiffs have asserted claims in this complaint in order to confer subject
14  matter jurisdiction over Defendants so that this case may be transferred to the District
15  of Montana by the Judicial Panel on Multidistrict Litigation.

16       78.    To the extent this case is transferred back to this Court for trial, Plaintiffs
17  reserve the right to assert additional causes of action or amend their causes of action as
18  applicable and based upon discovery and motion practice in the MDL.

19  **PRAYER FOR RELIEF**

20       WHEREFORE, Plaintiffs, on behalf of themselves and the Classes set forth
21  herein, respectfully request the following relief:

22       a.    That the Court certify this action as a class action pursuant to Rule 23 of
23  the Federal Rules of Civil Procedure; declare that Plaintiffs are the proper class
24  representatives; and appoint Plaintiff's counsel as Class Counsel;

25       b.    That the Court grant permanent injunctive relief to prohibit and prevent
26  Defendants from continuing to engage in the unlawful acts, omissions, and practices
27  described herein;

28       c.    That the Court award Plaintiffs and Class Members compensatory,

CLASS ACTION COMPLAINT

consequential, general, and/or nominal damages as appropriate, for each count as allowed by law in an amount to be determined at trial;

d.    That the Court award punitive or exemplary damages, to the extent permitted by law;

e.    That the Court order disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendants as a result of their unlawful acts, omissions, and practices;

f.    That Plaintiff be granted the declaratory and injunctive relief to prevent further injuries from manifesting as alleged herein;

g.    That the Court award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

h.    That the Court award pre-and post-judgment interest at the maximum legal rate and all such other relief as it deems just and proper; and

i.    Any other relief that the Court deems just and proper.

### **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial in the instant action.

Dated: February 3, 2025          Respectfully submitted by:

*/s/ Sabita J. Soneji*
Sabita J. Soneji, Cal. Bar No. 224262
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone: (510) 254-6808
*ssoneji@tzlegal.com*

Jason S. Rathod
**MIGLIACCIO & RATHOD LLP**
412 H St NE, Suite 302
Washington DC 20002
Tel. 202.470.3520
*jrathod@classlawdc.com*

John Heenan
**HEENAN & COOK**
1631 Zimmerman Trail

1    Billings, MT 59102
     Tel. 406.839.9091
2    *john@lawmontana.com*

3
     Amy Keller
4    **DICELLO LEVITT LLP**
     Ten North Dearborn, Sixth Floor
5    Chicago, Illinois 60602
     Tel. 312.214.7900
6    *akeller@dicellolevitt.com*

7
     J. Devlan Geddes
8    **GOETZ, GEDDES & GARDNER P.C.**
     35 N. Grand Ave.
9    Bozeman, MT 59715
     Tel. 406.587.0618
10   *devlan@goetzlawfirm.com*

11
     Raphael Graybill
12   **GRAYBILL LAW FIRM, PC**
     300 4th Street North
13   Great Falls, MT 59401
     Tel. 406.452.8566
14   *raph@graybilllawfirm.com*

15
     *Counsel for Plaintiffs and the Putative Class*
16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT